UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AWARE INTEGRATED, INC.**,<br><br>3400 Yankee Drive<br>Eagan, MN 55121,<br><br>and<br><br>**BCBSM, INC.**, d/b/a Blue Cross and Blue Shield of Minnesota,<br><br>3400 Yankee Drive<br>Eagan, MN 55121,<br><br>                      Plaintiffs,<br>    v.<br><br>**ROBERT F. KENNEDY, JR.**, in his official capacity as Secretary of Health and Human Services, U.S. Department of Health and Human Services,<br><br>200 Independence Avenue SW<br>Washington, D.C. 20201,<br><br>and<br><br>**STEPHANIE CARLTON**, in her official capacity as Acting Administrator, Centers for Medicare and Medicaid Services,<br><br>7500 Security Boulevard<br>Baltimore, MD 21244,<br><br>                      Defendants. | Civil Action No. _____ |

## **COMPLAINT**

Plaintiffs Aware Integrated, Inc. ("Aware") and BCBSM, Inc. ("BCBSM," and collectively with Aware, "Plaintiffs"), by and through their undersigned counsel, hereby submit their complaint

for relief against defendants Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services ("HHS"), and Stephanie Carlton, in her official capacity as Acting Administrator of the Centers for Medicare and Medicaid Services ("CMS"), to challenge unlawful, and arbitrary and capricious final agency action related to the Star Ratings system for Medicare Advantage and Part D health plan contracts, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 551-559 and 701-706.

## PRELIMINARY STATEMENT

1.      Medicare Advantage Star Ratings are a critical part of the Medicare Advantage program as they measure plans' quality and performance, drive enrollment, and ultimately impact member benefits. In this case, Plaintiff BCBSM has entered into a contract with CMS (designated as contract H5959) to operate as a Medicare Advantage organization ("MAO"). Plaintiffs' affiliated company, HMO Minnesota d/b/a Blue Plus, has a separate contract with CMS (designated as H2425) to operate an entirely separate MAO. Plaintiffs bring this case to rectify clear arbitrary and capricious conduct by CMS in connection with CMS's calculation of the 2025 Star Ratings for H5959. Namely, CMS held four "secret shopper" calls against contract H5959, despite the fact that those four calls were placed to the phone number for contract H2425, which is an entirely separate contract held by a different entity. It is arbitrary and capricious and contrary to law to hold calls against a contract in calculating Star Ratings when those calls were made to an entirely different contract for a different entity.

2.      CMS evaluates the quality and performance of each MAO compared to other MAOs through a grading process called "Star Ratings." Among other things, Star Ratings are intended to be used by Medicare beneficiaries to identify higher quality plans during enrollment. Incorrect Star Ratings are misleading and prevent members from having the right information to

choose the best plans. Furthermore, plans with higher overall Star Ratings receive additional revenue that is used to reduce premiums and cost-sharing and offer additional benefits to members. Thus, lower Star Ratings directly create higher cost and less benefits for members.

3. One of the measures that CMS uses to calculate Star Ratings is the success rate of calls that CMS "secret shoppers" (also referred to as surveyors or interviewers) make to the plan's call center to assess the plan's accessibility with respect to foreign language translators and Text-to-Voice teletypewriter ("TTY") services. CMS bases its call center accessibility measures on only a handful of secret shopper calls in a given measurement period and "failing" just one call can have significant negative consequences on the plan's Star Rating. For Plaintiffs, CMS determined to hold four unsuccessful phone calls against Plaintiffs' contract H5959, even though the calls were not made to the phone number for that contract. The calls went to a phone number for an entirely separate contract. CMS's arbitrary and capricious decision to hold the four unsuccessful but inapplicable calls against contract H5959 resulted in an improper score for the relevant measure, D01, for that contract, and, in turn, an overall Star Rating of 4 Stars. Had CMS not held these four calls against contract H5959, the contract would have received an overall Star Rating of 4.5 Stars. As a result of CMS's improper conduct resulting in the lower Stars Rating, Plaintiffs will lose an estimated $29 million in gross revenue, which would be reinvested into plans in the form of reduced premiums and increased benefits. These are staggering consequences for four calls that never should have been attributed to contract H5959 in the first place.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. This action arises under the Medicare Act, 42 U.S.C. § 1395 et seq.; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702 and 706; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

5. Venue is proper under 28 U.S.C. § 1391(e)(1).

6. This Complaint is timely filed. *See* 28 U.S.C. § 2401.

**PARTIES**

7. Aware Integrated, Inc. is a healthcare company with its principal place of business in Eagan, Minnesota. Aware is a leading healthcare enterprise that is committed to helping people live healthier lives. Aware and the Blue Cross and Blue Shield of Minnesota family of companies serve millions of plan members, including Medicare beneficiaries, across the State of Minnesota.

8. Aware, through direct and indirect subsidiaries, operates several health plans in the State of Minnesota. Specifically, BCBSM, Inc., d/b/a Blue Cross and Blue Shield of Minnesota, has its principal place of business in Eagan, Minnesota, and has entered into the contract with CMS designated as H5959. Plaintiffs have suffered damages in the form of improperly reduced measure-specific Star scores, Part D summary Star Ratings, and/or overall Star Ratings.

9. Defendant Robert F. Kennedy, Jr. is sued in his official capacity as Secretary of HHS. This includes overseeing the operations of CMS. Secretary Kennedy, in his official capacity, is responsible for implementing and complying with federal law, including the federal laws implicated in this action.

10. Defendant Stephanie Carlton is sued in her official capacity as Acting Administrator of CMS, an operating division of HHS. As Acting Administrator, Ms. Carlton is responsible for the administration of the Medicare health insurance program, including Medicare Parts C and D. Acting Administrator Carlton, in her official capacity, is responsible for implementing and complying with federal law, including the federal laws implicated in this action.

## FACTUAL ALLEGATIONS

### *The Medicare Advantage Program and Star Ratings*

11. Generally, people who are eligible for Medicare have two options to receive medical benefits. First, under original Medicare, eligible individuals may receive Medicare benefits directly from the federal government. *See* 42 U.S.C. §§ 1395c to 1395i-6 (Part A); 42 U.S.C. §§ 1395j to 1395w-6 (Part B). Alternatively, under Medicare Part C—commonly referred to as the Medicare Advantage program—CMS contracts with private organizations to administer Medicare benefits through a health plan. Medicare eligible individuals may enroll in health plans offered by an MAO, and the MAO is responsible for providing Medicare benefits to their enrollees.

12. In 2008, CMS began publishing annual Star Ratings for MAOs ("Star Ratings"), which are based upon certain data sets, to rate each plan on a scale of 1 to 5 Stars. *See* 42 U.S.C. § 1395w-23(o); see also 42 C.F.R. Part 422, Subpart D. The purpose of Star Ratings is to help Medicare consumers "compare the quality of Medicare health and drug plans being offered so they are empowered to make the best health care decisions" and provide "meaningful information about quality, alongside information about benefits and costs, to assist them in comparing plans and choosing the Medicare coverage option that best fits their health needs."[1]

13. Star Ratings are based on a 5-Star scale, set in half-star increments. *See* 42 C.F.R. §§ 422.162(b), 422.166(h)(1)(ii). CMS evaluates MA and Part D plans along a range of quality, compliance, and other measures and develops ratings on a five-star scale based on these measures. *See id.* §§ 422.166(a)(4), 423.186(a)(4). A 1.0 Star Rating is the worst rating, and a 5.0 Star Rating is the best. *Id.* §§ 422.166(a)(4), (c)(3), (d)(2)(iv), 423.186(a)(4), (c)(3), (d)(2)(iv).

---

[1] *See, e.g.*, 2025 Medicare Advantage and Part D Star Ratings, CTRS. FOR MEDICARE & MEDICAID SERVS. (Oct. 10, 2024), https://www.cms.gov/newsroom/fact-sheets/2025-medicare-advantage-and-part-d-starratings#:~:text=Approximately%2040%25%20of%20MA%2DPDs,or%20more%20stars%20in%202025.

14. This system is intended to reflect the quality and performance of each plan. 42 C.F.R. §§ 422.162(b)(1), 423.182(b)(1).

15. CMS calculates Star Ratings by assessing and individually grading (by giving a 1 to 5-Star score) several "measures" that fall into broad categories designed to measure the quality of the plan. Each measure has a certain weight assigned to it, and then the scores for the individual measures are used to calculate an overall weighted Part C and Part D summary Star Rating and overall Star Rating for each plan.

16. Each plan receives a numerical score on its applicable measures, which CMS converts into a "measure-level" Star Rating on a five-star scale using four thresholds or "cut points." 42 C.F.R. §§ 422.166(a)(4), 423.186(a)(4). The Star Ratings are based on the scores that these plans earn on various quality and performance "measure[s]." *See* 42 C.F.R. §§ 422.162(a), 423.182(a). CMS looks at measures within five broad categories: (1) outcome measures, which reflect improvements in a beneficiary's health; (2) intermediate outcome measures, which reflect actions taken which can assist in improving a beneficiary's health status; (3) patient experience measures, which reflect beneficiaries' perspectives of the care they received; (4) access measures, which reflect whether the plan creates barriers to beneficiaries receiving needed care; and (5) process measures, which capture the health care services provided to beneficiaries that can assist them in maintaining, monitoring, or improving their health status. *See Contract Year 2019 Changes to the Medicare Advantage and Medicare Prescription Drug Benefit Programs*, 83 Fed. Reg. 16440, 16532 (Apr. 16, 2018).

17. Historically, the Star Ratings system has served two key goals. First, the system provides Medicare beneficiaries with "comparative information on plan quality and performance," which enables them to make "knowledgeable enrollment and coverage decisions in the Medicare

Program." 42 C.F.R. §§ 422.160-(b)(1), 423.180(b)(1). Second, the system helps CMS perform "oversight, evaluation, and monitoring of MA and Part D plans" and compliance with regulatory and contract requirements under federal law. *See* 83 Fed. Reg. at 16520-16521; 42 C.F.R. §§ 422.160(b)(3), 423.180(b)(3).[2]

18. More recently, following passage of the Patient Protection and Affordable Care Act ("ACA"), the Star Ratings system serves a third purpose: providing "quality ratings on a 5-star rating system" to be used in administering additional payments for high-quality MAOs, which are referred to as "quality bonus payments" ("QBPs"). *See* 57 Fed. Reg. at 71218; 42 C.F.R. §§ 422.160(b)(2).

19. Under the ACA, a Medicare Advantage plan is entitled to QBPs from CMS depending on the "quality rating" of the plan, which "shall be determined according to a 5-star rating system." 42 U.S.C. § 1395w-23(e)(4)(A). Thus, if a Medicare Advantage plan receives a Star Rating of 4 stars or higher, its benchmark amount is increased, in turn increasing the rebates that CMS will pay by increasing the difference between the plan sponsor's benchmark and its bid. *Id.* § 1395w-23(o)(1), (3)(A).

20. Star Ratings also determine the portion of the difference that is returned as a bid rebate. 42 C.F.R. §§ 422.162(b)(2), 423.182(b)(2). Plans with a 4.5 Star Rating or higher receive 70% of the difference between the benchmark and the plan's bid; plans with a Rating between 3.5 and 4.5 Stars receive a 65% rebate, and plans with a rating under 3.5 stars receive a 50% rebate. 42 U.S.C. § 1395w-24(b)(1)(C)(v); 42 C.F.R. § 422.266(a)(2)(ii).

21. CMS prominently displays Star Ratings in its online and print resources concerning available MA plans. *See* 42 U.S.C. § 1395w-21. Through the online Medicare Plan Finder tool,

---

[2] *See generally Proposed Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs for Contract Year 2012*, 75 Fed. Reg. 71190, 71219 (Nov. 2, 2010).

CMS displays MA plans to prospective enrollees in order of highest to lowest Star Ratings to guide beneficiaries to higher-rated plans first. Medicare beneficiaries use the Star Ratings to assess the quality of the MA plans; and agents and brokers use the Star Ratings in assisting beneficiaries in selecting a plan that fits their health care needs.

### *Measure D01 - Call Center Foreign Language and TTY Availability*

22. Under federal regulations, MAOs are required to maintain a toll-free customer service call center. 42 C.F.R. § 422.111(h). CMS assesses each contract's Part D call center performance based on a measure known as "D01 – Call Center – Foreign Language Interpreter and TTY Availability." *See* CTRS. FOR MEDICARE AND MEDICAID SERVS., *Medicare 2025 Part C & D Star Ratings Technical Notes* ("2025 Technical Notes"), at 80–81.

23. MAOs must be able to provide specific information on a timely basis to current and prospective enrollees upon request, including with a toll-free customer service call center. 42 C.F.R.§ 422.111(h). By regulation, call centers must limit average hold times to no more than two minutes, answer 80 percent of incoming calls within 30 seconds, and limit the disconnect rate of all incoming calls to no more than five percent, among other requirements. *Id.*

24. Among the measures underlying both Parts C and D Star Ratings are the Foreign Language Interpreter and TTY Availability measures, which gauge the availability of foreign-language interpretation and TTY services to prospective enrollees who call a plan's customer service phone line. For Part D the measure is labeled D01 (underlying Part D ratings). *See* 2025 Technical Notes at 78–82.

25. CMS conducts the "Accuracy & Accessibility Study" to evaluate plan performance on these measures. The study uses surveyors to place anonymous test calls to plans' customer-service call centers. *See* CTRS. FOR MEDICARE & MEDICAID SERVS, *2024 Part C and Part D Call Center Monitoring—Timeliness and Accuracy & Accessibility Studies* at 1-2 (Dec. 1, 2023).

26. To measure D01 scores, CMS conducts "secret shopper" calls to plans to measure the plan's accessibility via foreign language interpretation and TTY. CMS then determines the success rate by comparing the number of attempted calls to the number of completed calls. That success rate is then used to determine the D01 measure score. D01 is highly weighted in the overall Star Rating calculation and, therefore, has an outsized impact on the overall score.

*CMS Issues Star Rating Calculations for Plaintiffs' Contracts*

27. CMS issued initial 2025 Star Rating calculations for BCBSM's contract H5959 based on CMS's application of the weighted quality measures previously outlined.

28. As part of the 2024 call center accessibility study, CMS via email on November 27, 2023, contacted Plaintiffs' designated Medicare Compliance Officer, requesting that the designated representative access CMS's "call center indicator" website. This website provides instructions for how to assign phone numbers to call centers. *See* CTRS. FOR MEDICARE & MEDICAID SERVS., *Call Center Indicator Assignment* (2024).[3]

29. Plaintiffs followed these instructions and correctly noted that contract H2425 (which is held by Plaintiffs' affiliated entity) uses phone number 1-866-477-1584 and contract H5959 uses phone number 1-855-579-7658. Plaintiffs further noted that the numbers flowed through the same physical call center and rely on the same interpretation services vendor.

30. Contract H2425's marketing and customer service materials only include the phone number 1-866-477-1584 for prospective beneficiary communication with H2425, a Dual Special Needs Plan under HMO Minnesota d/b/a Blue Plus. By contrast, contract H5959, a PPO under BCBSM Inc. d/b/a Blue Cross and Blue Shield of Minnesota, only included the phone number 1-855-579-7658 for prospective beneficiary communication. Each individual plan receives and

---

[3] The website is periodically updated to reflect the current calendar year, but otherwise static. *See generally* https://callcenterindicator.com/instructions.aspx.

9

services the calls made to its designated phone number. The phone numbers are not shared between the two plans.

31. Notwithstanding the fact that contracts H5959 and H2425 have separate telephone numbers, CMS identified four failed calls that it made to 1-866-477-1584, the phone number assigned to contract H2425, and held those calls against H5959 when calculating the D01 call center score for H5959. Materials submitted by CMS and BCBSM reflect that these are CMS Call IDs D1201133, D1300853, D1501396, and D1900342 (the "Disputed Calls"). The Disputed Calls were made to the phone number for contract H2425—**not** the phone number for contract H5959.

32. Contract H5959 received a D01 call center score of 95%, which equated with a measure level score of 4.0. This improper Star score for Measure D01 was the result of holding four calls against contract H5959 even though those four calls were made to the telephone number for an entirely different contract for one of Plaintiff's affiliated entities, H2425.

33. CMS's decision to include these calls as failed for contract H5959 for purposes of calculating that contract's Star Rating is arbitrary and capricious as those calls were made to an entirely different contract held by a different entity. There is no evidence that CMS dialed the number assigned to contract H5959, as specifically called for in its guidance materials. *See* CTRS. FOR MEDICARE & MEDICAID SERVS, *2024 Part C and Part D Call Center Monitoring—Timeliness and Accuracy & Accessibility Studies* at 5 (Dec. 1, 2023) ("We call the telephone number listed in the HPMS [Health Plan Management System] as provided by the plan . . . ."). Rather, the calls were made to the phone number identified for a *separate contract held by a distinct entity*.

34. In prior communications with CMS, CMS stated that it was holding the four Disputed Calls against contract H5959, despite the fact that CMS acknowledged those calls were made to the number for contract H2425, based upon CMS's policy of judging contracts that have

a single call center together. But such policy is arbitrary and capricious when contracts have their own telephone numbers. Furthermore, any such policy is contrary to the plain language of applicable federal regulations. To be sure, regulations binding on CMS's Star Rating calculations mandate that "measures are assigned stars at the contract level." 42 C.F.R. § 422.162(b). The regulations do not authorize CMS to include calls in the D01 call center score for one contract that were made to the phone number assigned to a different contract based merely on the fact that the contracts share a common *call center*.

35. Because applicable federal regulations unambiguously mandate that CMS must assign stars at the *contract level*, only the data that is directly relevant to the particular contract under evaluation must be used to calculate scores and assign Star Ratings for that contract.

36. Because all calls made to the number assigned to contract H5959 at 1-855-579-7658 were successful, contract H5959 should be awarded a 100% compliance rate and a 5 Star rating for measure D01. Specifically, calculating the call data "at the contract level," as required, results in a total of 51 foreign language and TTY calls made to the phone number assigned to contract H5959, all of which were successful. As a result, the D01 Star Rating for contract H5959 would be 100%, its measure level score would be 5.0, and its overall Star Rating should have been 4.5 Stars.

37. CMS's arbitrary and capricious conduct and actions contrary to law have caused Plaintiffs approximately $29 million in damages related to the H5959 contract alone in the form of lost quality bonus payments and rebate retention, which would be used to increase benefits to the Medicare beneficiaries that Plaintiffs serve.

*CMS's Action is Final and Ripe for this Court's Review*

38. CMS's Star Ratings decision for Plaintiffs, which includes the agency's final decision about the Disputed Calls, is a final agency action within the meaning of 5 U.S.C. § 704.

39. CMS's Star Ratings decision is an agency action within the meaning of 5 U.S.C. §§ 551(6) and (13), because it is an "order" constituting an agency's final disposition in a matter other than rule making.

40. As noted above, CMS has established a process for informal communication with CMS Call Center Monitoring (the segment of CMS responsible for the D01 measure) and provides for Plan Preview 1 and Plan Preview 2. Plaintiffs have challenged Call IDs D1201133, D1300853, D1501396, and D1900342 through communications to CMS Call Center Monitoring, by filing a Request for Reconsideration, and CMS has conclusively and repeatedly stated its decision is final.

41. On August 9, 2024, Plaintiffs submitted a detailed response in connection with Plan Preview 1 rebutting the information provided by CMS Call Center Monitoring and providing additional documentation in support of its position.

42. On August 9, 2024, CMS responded to Plaintiffs, stating that because contract H5959 and contract H2425 "share a call center, that is why they share results," and that "[t]he calculations provided by CMS are accurate."

43. On October 10, 2024, CMS published the final Star Ratings to the public via the Medicare Plan Finder. CMS's Star Ratings decision after the plan preview period is a final agency action because the ratings are now publicly announced for consideration by current and potential customers during 2025 enrollment.

44. CMS's Star Ratings decision is also a final agency action because it has determined Plaintiffs' legal rights and obligations and otherwise triggered legal consequences for Plaintiffs, including, but not limited to, impacts on member enrollment and quality bonus payments.

45.     Prior to filing this action, Plaintiffs on December 3, 2024 filed a Request for Reconsideration of CMS's Star Ratings and the quality bonus payment determinations awarded by CMS for contract H5959. On January 13, 2025, CMS responded with a Technical Report for contract H5959. In sum, CMS found "no evidence that [CMS] incorrectly scored the questioned calls to the call center that [Plaintiffs'] authorized representative identified for BCBSM, Inc.," doubling down on its policy that "[s]ince [the contracts] share a call center, they share results" for purposes of measure D01. CMS's designated reconsideration official, however, merely adopted the CMS Technical Report without any analysis or consideration of Plaintiffs' position.

46.     CMS has repeatedly stated its decision is final and that it will not be altering its decision. Plaintiffs have therefore been forced to file this action as they stand to suffer reputational harm, loss of potential and actual customers, and millions of dollars unless this Court intervenes.

## CLAIMS FOR RELIEF

### *First Claim for Relief*

*(Violation of the Administrative Procedure Act – Arbitrary and Capricious Agency Action, Decision Not Supported by Substantial Evidence, and Contrary to Law)*

47.     Plaintiffs incorporate Paragraphs 1 through 46 of this Complaint as if set forth fully herein.

48.     Under 5 U.S.C. § 706(2)(A), an agency action can be held unlawful and set aside if it is arbitrary, capricious, or contrary to law.

49.     CMS's decision to hold the Disputed Calls against contract H5959 is arbitrary and capricious and contrary to law because the calls were made to a different contract's telephone number—not H5959's phone number. Accordingly, there is no basis to hold these calls against contract H5959.

50. Plaintiffs were damaged as a direct result of CMS's actions, which is estimated to have an approximately $29 million gross revenue impact on Plaintiffs. In addition, Plaintiffs also stand to suffer imminent and irreparable harm, such as reputational harm and loss of potential and actual customers.

51. Plaintiffs therefore respectfully request the relief as prayed for below.

### *Second Claim for Relief*

*(Declaratory Judgment)*

52. Plaintiffs incorporate Paragraphs 1 through 51 of this Complaint as if set forth fully herein.

53. CMS's calculation of the Star Ratings is a final agency action made reviewable by 5 U.S.C. § 706(2).

54. Plaintiffs are adversely affected and harmed by the calculation of their Star Ratings.

55. An actual controversy has arisen and exists between the Plaintiffs and Defendants regarding CMS's calculation of Plaintiffs' Star Ratings when CMS incorporated into its D01 Star measure calculations calls that were never even dialed to the phone number assigned to contract H5959.

56. Plaintiffs request a declaration from this Court under 28 U.S.C. § 2201 that CMS's calculation is arbitrary and capricious.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask this Court to:

A. Enter judgment against Defendants and in favor of Plaintiffs for each count alleged in this Complaint;

B. Issue an injunction ordering Defendants to recalculate Plaintiffs' Star Ratings without considering the disputed calls and immediately publish the recalculated Star Ratings in the Medicare Plan Finder;

    C.    In the alternative, hold that Plaintiffs' Star Ratings decision is unlawful and remand the matter to CMS to recalculate forthwith Plaintiffs' Star Ratings without considering the disputed calls and immediately publish the recalculated Star Ratings in the Medicare Plan Finder; and

    D.    Grant such other and further relief as the Court deems just and proper.

Dated: March 10, 2025

Respectfully submitted,

/s/ Lesley Reynolds

Lesley C. Reynolds (D.C. Bar No. 487580)
Lara E. Parkin (D.C. Bar No. 475974)
David A. Bender (D.C. Bar No. 1030503)
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
(202) 414-9200
lreynolds@reedsmith.com
lparkin@reedsmith.com
dbender@reedsmith.com

Amir Shlesinger (pro hac vice forthcoming)
Reed Smith LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071
(213) 457-8000
ashlesinger@reedsmith.com

Steven D. Hamilton (pro hac vice forthcoming)
REED SMITH LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606
(312) 207-1000
shamilton@reedsmith.com

*Attorneys for Plaintiffs Aware Integrated, Inc. and BCBSM, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2025, a true and correct copy of this Complaint was filed via the Court's CM/ECF system.

*/s/ Lesley Reynolds*
Lesley C. Reynolds
